STATE OF GEORGIA
COUNTY OF HENRY

## THE CLUB AT IVEY ESTATES, INC.
## MANAGEMENT AND LEGAL SERVICES AGREEMENT

THIS AGREEMENT, made and entered into this 1st day of July 1, 2017, by and between **THE CLUB AT IVEY ESTATES, INC.**, a Georgia non-profit corporation (hereinafter called the "Association") and **COMMUNITY ASSOCIATION MANAGEMENT, LLC**, a Georgia limited liability company, as Agent (hereinafter called the "Agent").

WITNESSETH:

WHEREAS, the Association consists of the Owners of real property in the Community (as defined below) and acts on behalf of such Owners in accordance with the Community Documents and applicable laws, rules and regulations; and

WHEREAS, the Association desires to engage the Agent to assist in fulfilling the Association's obligations to manage the Community.

NOW, THEREFORE, FOR AND IN CONSIDERATION of the mutual covenants and promises contained herein, and of other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

1. Definitions.

   As used in this Agreement:

   A. The term "Agent" shall be **COMMUNITY ASSOCIATION MANAGEMENT, LLC** and its employees.

   B. The term "Association" shall mean **THE CLUB AT IVEY ESTATES, INC.**, its successors and assigns, acting on behalf of the owners in accordance with the Documents filed on record for **THE CLUB.**

   C. The term "Board of Directors" or "Board" shall mean the governing body of the Association, the members of which shall be appointed or elected by the Owners from time to time as provided in the Community Documents.

   D. The term "Community" shall mean that development known as **HENRY**, located in the State of Georgia, County of Henry, consisting of 78 homes.

   E. The term "Community Association Documents" shall mean those instruments and documents pursuant to which the Association and the Community are established, including the Declaration of Protective Covenants, Conditions and Restrictions or similar documents, if any, the Articles of Incorporation, the Bylaws and all recorded covenants and resolutions.

   F. The term "Manager" shall mean a full-time employee of the Agent. The Manager's duties shall include overall responsibility for the performance of this Agreement.

   G. The term "Owner" shall mean any person or persons described in the Community Documents as being a member of the Association.

MANAGEMENT AGREEMENT, THE CLUB AT IVEY ESTATES, INC. - 1



2.  Appointment.

The Association hereby appoints, and the Agent hereby accepts appointment, on the terms and conditions hereafter provided, as the exclusive managing agent of the Community.

3.  Term.

This Agreement shall be effective from July 1, 2017 until June 30, 2018, a term of one (1) year, and shall continue thereafter from month to month until terminated by either party. This Agreement may be terminated, with or without cause, by either party at any time upon thirty (30) days prior written notice.

4.  General Responsibilities.

The Agent acknowledges that the function of the Association is to operate and manage the Community as contemplated by the Community Documents. The Agent agrees to cooperate fully with, and provide assistance to, and to act at the direction of the Board of Directors in the performance of such functions as herein set forth. The Agent also agrees to cooperate fully with all committee members. It is further understood and agreed that the authority and duties conferred upon the Agent hereunder are confined to the common areas as defined in the Community Documents. Agent, however shall not be responsible or liable to the Association or anyone else for any injuries to persons or damage to property that occurs in these common areas that are not designed for regular use. The Agent shall have no responsibility for any replacement, repair or maintenance of the interior of the homes.

5.  Information.

In order to assist the Agent in functioning hereunder, the Association shall, to the extent such are in its actual possession, furnish the Agent with a complete set of the Community Documents and such other information, including relevant financial reports and budgets, as may be useful to the Agent in performing hereunder. With the aid of these documents and an inspection made by its personnel, the Agent will inform itself with respect to the layout, construction, location, character, plan and operation of the lighting, heating, plumbing and ventilation systems, and other mechanical equipment relating to the common area of the Community. The Agent shall be entitled to rely upon the accuracy, completeness and authenticity of all information provided by the Association. Agent shall cause an inventory to be taken of all furniture, equipment, maintenance tools, and supplies which are owned or leased by the Association.

6.  Management of the Community.

The specific management services to be performed under this Agreement and the manner in which services are to be performed are as follows:

General Matters.

(1) The Agent shall have primary and day-to-day responsibility for the management and maintenance of the Community and will be generally available at the Agent's office during normal working hours (9:00 a.m. to 5:00 p.m.), Monday through Friday (except holidays). Agent is also available to attend weekend meetings with the committees of the Association or the Board at the Association's request, but weekend meetings are billed at a rate equal to One Hundred Eighty-Five Dollars ($185.00) per hour.

(2) The Agent shall visit the property once a month looking for violations of the Community Association Documents during normal business hours, and report its findings to the Board of Directors. The President or another member of the Board may accompany the Agent during the above-referenced inspection.

(3) The Agent will confer fully with the Board in the performance of his duties and will attend the Annual Association meeting at no charge. The Agent will be available via phone conference for quarterly Board meetings. Board meetings shall not exceed one (1) hour in length.

    (4)    The Agent will handle dispute resolution and rules enforcement within the guidelines set forth in the Community Association Documents.

    (5)    The Agent will provide guidance and advice to the Board and to the Association on policy issues.

B.    <u>Monies of the Association</u>.

    (1)    The Agent shall provide complete and accurate accounting of all funds received in the name of the Association and will make the books of the Association available to any board member of the Association within three business days of such a request.

    (2)    All money collected, from whatever source, in the name of the Association will be recognized as the property of the Association and will be accounted for by the Agent and deposited in the bank account of the Association within three business days from the time that it is collected by the Association.

    (3)    The Agent shall manage the assets of the Association according to standards consistent with good business practice and the overall plan and direction of the Board. All accounts for the Association shall be kept separate and apart from all other accounts of the Agent, and there shall be no commingling of funds with accounts of Agent or accounts of others. The Agent shall provide monthly to the Board of Directors a complete accounting of all financial transactions, including a statement of all income, all past due accounts receivable, all monies disbursed and any accounts payable, together with a statement showing the balance of cash on hand and in each bank account. In addition, Agent shall provide quarterly or at such other times as may be requested by the Board, bank statements for all Association accounts and canceled checks. These reports shall be provided through the Treasurer of the Association.

    (4)    The Agent shall establish and maintain a bank account or accounts for the deposit of monies collected by the Agent in the name of the Association. The Agent shall have the authority to draw thereon for any payments to be made by the Agent to discharge any liabilities or obligations incurred pursuant to this Agreement, and for the payment of monthly fees to the Agent, all of which payments shall be subject to the limitations of this Agreement. Agent shall serve in a fiduciary capacity with respect to all monies of the Association handled by Agent. Notwithstanding the above, the Association may at any time revoke Agent's authority to sign checks, withdraw monies or otherwise handle the funds of the Association by giving written notice of the same to Agent. Annually at such time that the Board may request in writing and at the expense of the Association, said records, books and accounts may be audited by a Certified Public Accountant whose report will be submitted to the Board. Agent agrees to secure bids and assist the Board in the selection of an auditor.

    (5)    Subject to the approval and direction of the Board, the Agent shall open one or more savings or "money market" accounts in the name of the Association in which monthly deposits may be made, according to the availability of funds, for any reserve accounts authorized by the Board. Withdrawals from or redemption of such accounts shall require the signature of two Board members. All earnings or interest realized on the accounts shall be posted to the books of the Association.

    (6)    The above accounts will be maintained in a bank or banks whose deposits are insured by the Federal Deposit Insurance Corporation, or similar governmental agency, in a manner to indicate the custodial nature thereof, and shall include, but not be limited to, checking, passbook savings, certificate of deposits, U.S. Treasury Bonds and notes, and money market accounts. Withdrawals or redemptions against these accounts will be in accordance with this Agreement or upon the request of the Board. Interest earned on these accounts shall be posted to the books of the Association.

C. Expenses and Liabilities of the Association.

(1) The Agent shall have the authority to make arrangements and contracts for the general maintenance of the Community and for repairs to areas of the Community within the responsibility of the Association, subject to the limitations imposed by the budget or the Board and in accordance with the terms of the Community Documents. For any one item of repair or replacement, any expense incurred under this paragraph shall not exceed the sum of FIVE HUNDRED DOLLARS ($500.00), unless specifically authorized by at least two (2) members of the Board, except that emergency repairs, involving danger to life or property or immediately necessary for the safety of the Association members or the preservation of property may be made by the Agent without regard to the dollar limitation imposed by this paragraph. The Agent, if reasonably possible, will confer with the Board concerning each such emergency expenditure prior to disbursement. All contracts for work or services in excess of FIVE HUNDRED DOLLARS ($500.00) shall be in writing and executed by an officer of the Association except that emergency repairs (as defined herein) in excess of sum may be made by the Agent without regard to this requirement.

(2) The Board shall interview, hire, supervise and discharge additional personnel necessary to properly maintain and operate the Community according to the operation schedule and rates approved by the Board of Directors. Such personnel shall be employees of the Association. Compensation for the services of such personnel shall be considered an operating expense of the Association.

(3) All liabilities of the Association remain with the Association, and the fact that the Agent takes the responsibility for making timely payments to reduce such liabilities does in no way make the Agent directly responsible for those liabilities. The Agent's obligations hereunder are expressly subject to the limitations set forth in this Agreement.

(4) The Agent shall bear the sole responsibility and cause to be disbursed regularly and punctually all wages, fees and other compensation due and payable to personnel employed by Agent to fulfill its obligations under this Agreement. The Agent shall withhold from employees' wages all income, social security, and other taxes now or in the future required by law and shall pay over these sums to the proper authorities at or before the due dates of same.

(5) The Agent shall, with the approval of the Board, make contracts for the (pool, landscaping and other similar services) that the Board deems necessary. All written contracts shall be made in the name of the Association and executed by an officer of the Association. When taking bids and/or issuing purchase orders in the name of the Association, the Agent will endeavor to obtain the best possible prices and terms consistent with good business practices. If desired, all contracts other than utilities will require Agent to obtain competitive bids on an annual basis. The Agent shall cause to be disbursed regularly and punctually for all sums due and authorized to be incurred under the terms of this Agreement from the funds deposited in the operating account.

(6) Agent shall promptly investigate and make a full timely written report to the applicable insurance company as to all accidents or claims for damage relating to the ownership, operation and maintenance of the Community, any damage or destruction to the Community and the estimated cost of repair thereof, and shall prepare any and all reports required by an insurance company in connection therewith. All such reports shall be timely filed with the insurance company as required under the terms of the insurance policy involved. Subject to the Association's written approval, Agent is authorized to settle any and all claims against insurance company arising out of any such policies as required under the terms of the insurance policy involved.

D. Owner Assessments.

(1) Agent will develop effective assessment collection and accounts payable procedures.

(2) If a special assessment is levied or there is any change in the normal payment of assessments (including increases in amounts), the Agent shall make every reasonable effort to notify in advance (within thirty (30) days) all Owners of such change.

(3) Collection of past due amounts will be handled in accordance with the Community Documents and the guidelines formulated by the Agent and Board of Directors. The accounts remaining uncollected after implementation of normal administrative collection procedures by the Agent shall be brought to the attention of the Board for action. In no event shall the Agent be held liable for failure to collect said past due sums unless such failure is the result of willful neglect or willful misconduct. Agent will coordinate collection procedures with attorney Lee Mason of the Law Offices of Lee Mason, LLC.

E. General and Administrative Matters.

(1) The Agent will receive service requests and complaints from the members of the Association, will consider such requests, and will take appropriate action upon each. Requested actions will be recorded in a work request log maintained by the Agent.

(2) Report to the Board of Directors any architectural control violations or any other violations of the Community. Document which violations are observed by Agent and, upon the approval of the Board, give notice of such violations to the responsible Owners (via regular or registered/certified mail) and the Board. Agent shall attempt to secure full performance by Owners of all items of maintenance for which such Owners are responsible by notification thereof to said Owners as and when such shall become necessary.

(3) Upon discovery by the Agent of the requirement for any major repairs to common areas, the Agent shall report to the Board and make recommendations for correction. If the problem is beyond the expertise of the Agent or the scope of this Agreement, the Agent will, on direction of the Board and at the expense of the Association, call in an independent contractor to obtain cost estimates and assist in developing specifications for required work.

(4) The Agent will monitor and otherwise supervise all independent contractors engaged by the Association under the following stipulations:

   a. The Board must inform the contractor of the Agent's responsibility to oversee the project in question and direct the contractor to recognize the Agent as authorized agent of the Association.

   b. The Agent will make regular visits to the work site to inspect the progress and results of the contractor's work. Any deviations from normal and accepted procedures of which the Agent becomes aware will be brought to the attention of the Board and the contractor.

   c. The Agent will be furnished a copy of the contract, and will assist the Board in interpretation of the terms and conditions of the contract and will act as an advisor to the Board in matters concerning the contract.

   d. The Agent shall have no express or implied responsibility for the performance of the contract, except as set forth in this subparagraph (3).

(5) Annually, at such time as required by the Community Documents, the Agent shall prepare a projected operating statement setting forth in itemized fashion a statement of the anticipated receipts and disbursements for the next fiscal year based on the current assessments and general condition of the Community. Accompanying such statement shall be an operating budget containing such recommended changes to the aforesaid statement as the Agent believes prudent for proper operation and maintenance of the Community. This budget, together with justification for the estimates, shall be submitted to the Board for approval. Upon approval and adoption by the Board, or Association, as appropriate, this budget will serve as the supporting document for the schedule of assessments for the new fiscal year and shall constitute the major control guideline under which the Agent shall operate during the new fiscal year.

(6) The Agent shall maintain all office records and accounts in accordance with recognized and acceptable procedures and in a manner reasonably satisfactory to the Board, which records shall be subject to examination by the Board and (except for communications designated by the Board) by the membership of the Association at any time during normal business hours.

(7) Agent will engage in unlimited telephone consultation and e-mails with Board members regarding legal questions they might have and with respect to the status of ongoing work that Agent is doing on the Board's behalf. Agent will, at the Association's request, write standard collection letters to owners who have not paid their assessments demanding payment and informing them of possible further legal action. There will be no legal fees charged for assessment collection letters. There will also be no legal fees incurred for the preparing and filing of liens based on non-payment of assessments, nor will there be legal fees incurred by the Association for collection actions in Magistrate Court. In other words, if Agent does not collect the attorney's fees from the resident, then Agent will not get paid attorneys' fees for pursuing collection actions against residents.

(8) In addition to Agent's monthly fee it charges to the Association, photocopies will be billed at $.25 per page. The Agent's rates for other internal charges, including but not limited to, postage (including certified mailing) and long distance telephone calls reflect certain overhead directly attributable to the service or items provided and are available to you on request.

F. <u>Ownership of Electronic Books and Records</u>. The Association is the sole owner of all information contained in the books and records of the Community including, but not limited to, Income and Expense Statements, Assets and Liabilities Statements, Yearly Budgets, Financial Reports and other Special Reports, and all other records kept by the Agent in the fulfillment of its duties as Manager of the property. However, all computerized formats of such information including, but not limited to, computer records, computer disks and diskettes, software, digital records, CDs and computer equipment and parts thereof, belong exclusively to the Agent. Upon termination of the relationship between the Agent and Association, the Association shall be entitled to receive only printouts and hard copy versions of books and records. Notwithstanding anything to the contrary contained herein, upon such termination, the Agent, at its sole discretion, may transfer such information to nonproprietary formats and provide the Association with a diskette containing the information.

G. <u>Relationship of Agent to Association</u>. The relationship of the parties to the Agreement shall be that of Principal and Agent, and all duties to be performed by Agent under this Agreement shall be for and on behalf of Association, in Association's name, and Association's account. In taking any action under this Agreement, Agent shall be acting only as Agent for Association, and nothing in this Agreement shall be construed as creating a partnership or any other relationship between the parties to this Agreement except that of Principal and Agent, or as requiring Agent to bear any portion of losses arising out of or connected with ownership or operation of the property. Nor shall Agent at any time during the period of this Agreement be considered a direct employee of the Association. Neither party shall have the power to bind or obligate the other except as expressly set forth in this Agreement, except that Agent is authorized to act with such additional authority and power as may be necessary to carry out the spirit and intent of this Agreement.

H.  <u>Compensation</u>. The Agent shall be paid for services rendered by it under this Agreement on the 1st day of each calendar month in the amount of $537.50. As part of this fee, agent will also manage the pool security key scan system. The Association will provide to Agent the newly purchased key scan system software as well as the pool key card database, pre-purchased security key cards and all documentation on the components of the system. Agent can also prepare tax returns annually for a flat fee of $295.

I.  <u>Expiration and Termination</u>. Upon the expiration or termination of this Agreement, the parties shall account to each other with respect to all matters outstanding as of the date of such expiration or termination.

J.  <u>Binding Obligation and Amendment</u>.

 (a)  This Agreement shall inure to the benefit of, and constitute a binding obligation upon, the parties hereto, their respective successors and assigns.

 (b)  This Agreement shall constitute the entire agreement between the parties hereto, and no variance or modification hereof shall be valid and enforceable except by an amendment, in writing, executed and approved in the same manner at this Agreement.

 (c)  This Agreement shall be governed by and construed in accordance with the laws of the State of Georgia. Venue for any action to enforce this Agreement or arising out of this Agreement shall be in the Superior Court of Henry County, Georgia.

K.  <u>Notices</u>. Any notice, demand, consent, authorization, request, approval or other communication (collectively, "Notice") that any party is required, or may desire, to give to or make upon the other party pursuant to this Agreement shall be effective and valid only if in writing, signed by the parties giving such notice, and delivered personally to the other parties or sent by express 24-hour guaranteed courier or delivery service, by facsimile transmission with telephone confirmation or certified mail of the United States Postal Service, postage prepaid and return receipt requested, addressed to the other parties as follows (or to such other place as any party may by Notice to the others specify):

  To Agent:  Community Association Management, LLC
       Attention: Lee Mason
       P.O. Box 143089, Fayetteville, GA 30214
       Email: lee@camga.com

  To Association: The Club at Ivey Estates, Inc.
       Attention: Marquisha Maiden, President
       138 Johns Creek Lane
       Stockbridge, GA 30281
       Email: iveyestateshoa@gmail.com

L.  <u>Indemnification</u>.

 (a)  ==The Association shall indemnify and hold harmless the Agent against any and all liabilities, damages, costs and expenses, including attorney's fees (all of which are hereafter referred to as "Expenses") reasonably incurred by or imposed upon the Agent in connection with any action, suit or other proceeding (including settlement of any suit or proceeding, if approved by the Association's Board of Directors) to which Agent may be a party or in which it may become involved by reason of being or having been the Association's Agent hereunder whether or not this Agreement shall be in effect at the time such expenses are incurred where such action, suit, or other proceeding involves a claim arising out of an action or inaction on the part of Agent pursuant to this Agreement and, provided further, that the indemnification obligations set forth above shall not extend to any expenses arising in connection with any gross negligence, willful misconduct, or bad faith of Agent.== ==The Agent shall have no personal liability with respect to any contract or other commitment made by it, in good faith, on behalf of the Association and the Association shall indemnify and forever hold the Agent free and harmless against any and all liability to others on account of such contract or commitment.==

MANAGEMENT AGREEMENT, THE CLUB AT IVEY ESTATES, INC. - 7

(b) The Association shall obtain and keep in force adequate insurance against physical damage and against liability for loss, damage or injury to property or persons, which might arise out of the occupancy, management, operation or maintenance of the property. The amounts and types of insurance shall be acceptable to both Association and Agent, and any deductible required under such insurance policies shall be the Association's expense. Agent shall be covered as an additional insured on all liability insurance maintained with respect to the property. Liability insurance shall be adequate to protect the interests of both Association and Agent and in form, substance, and amounts reasonably satisfactory to Agent. Agent may, but shall not be obligated to, place said insurance and charge the cost thereof to the operating account.

(c) Agent assumes no liability whatsoever for any acts or omissions of Association, or any previous owners of the property, or any previous management or other agent of either. Agent assumes no liability for any failure of or default by any resident in the payment of any monthly assessments or other charges due to the Association or in the performance of any obligations owed by any resident to the Association. Nor does the Agent assume any liability for previously unknown violations or environmental or other regulations, which may become known during the period this Agreement is in effect. Any such regulatory violations or hazards discovered by the Agent shall be brought to the attention of the Association in writing, and the Association shall promptly cure them.

(d) The Association shall pay all expenses incurred by the Agent, including actual attorneys' fees and Agent's cost and time, and any liability, fines, penalties or the like, in connection with any claim, proceeding or suit involving an alleged violation by Agent or Association, or both, of any law pertaining to fair employment, environmental protection, taxes or fair housing, including but not limited to, any law prohibiting or making illegal discrimination, provided, however, that this section shall not apply if said expenses were incurred as a result of Agent's willful misconduct or gross negligence nor shall this section apply if the Agent was acting outside its authority under this Agreement. The Association shall be responsible for the payment of any legal fees in connection with lawsuits brought against the Association.

M.  <u>Duties of the Association</u>.  The Association agrees:

(a) To retain the Agent to perform the management services set forth herein for the term of this Agreement.

(b) To furnish the Agent with:

   (1) a complete list of owners, lessees, and other users, to date, to include home and business addresses, telephone numbers, and other information reasonably necessary for communication and billing purposes, supplemented and updated as units are sold or leased;

   (2) a set of the plans and specifications of the Association, if available;

   (3) a current copy of the Declaration, Bylaws, and rules, together with all amendments thereto; and

   (4) To provide the Agent with evidence of authority by way of certified resolutions or otherwise and such specific directions as the Agent may reasonably require.

(c) To hold the Agent harmless and free from all liability in the event of bankruptcy, receivership, insolvency, or failure of a depository for the Association's funds, provided the depository is insured by a Federal Agency or otherwise specifically designated by the Association.

(d) To defend, indemnify, and hold the Agent harmless from all liability whatsoever arising in connection with the management of the Association excepting insurance cases of willful misconduct and to carry necessary public liability insurance, adequate to protect the Agent to the same extent they protect the Association, and on request provide the Agent with evidence that such insurance is in force and effect and that the Agent is named as an additional insured.

(e)      To cooperate with the Agent to the extent required to perform expeditiously, efficiently, and economically the management services required under this Agreement.

(f)      To designate one member as the Board's representative to deal with the Agent on any matter relating to management of the Association. In the absence of any other designation, the President of the Board will be deemed to have this authority. Agent will, however, answer to all Board members on any matters relating to management of the Association.

IN WITNESS WHEREOF, the parties hereto have hereunto executed and sealed this Agreement as of the day and year first above written, by their duly elected and authorized officers.

AGENT:

COMMUNITY ASSOCIATION
MANAGEMENT, LLC/LAW OFFICES
OF LEE MASON, LLC

By: _____
    Lee Mason, Member

ASSOCIATION:

THE CLUB AT IVEY ESTATES, INC.

By: _____
    Marquisha Maiden, President

MANAGEMENT AGREEMENT, THE CLUB AT IVEY ESTATES, INC. - 9